MARY HILLYER, appellant, *and* JESSE F. SCHENCK, appellee.

The right of appeal from a sentence or decree of the Orphans Court rejecting or admitting a will to probate, is by the statute made conditional upon its being demanded within thirty days after the sentence or decree of the Orphans Court.

The thirty days are to be computed not from the time the decision is announced, but from the time the decree was reduced to writing, signed and filed, and entered upon the minutes of the court.

The statute requiring the decrees of the Orphans Court to be signed by the presiding judge (*Nix. Dig.* 588, § 63,) was designed rather to regulate the mode in which the decree should be authenticated, and its existence verified, than to prescribe an essential requisite to the existence or validity of the decree. The decree, having been duly made and filed, may be subsequently authenticated by the signature of the presiding judge.

Hillyer *v.* Schenck.

The demand and filing of the appeal in the court below, and not the petition of appeal in this court, is the demand of appeal intended by the act, and which, alone, is required to be made within thirty days.

The time of filing the petition of appeal is regulated by rule of court, and whenever the rule has not been complied with, the court may, in the exercise of its discretion, release the party from the effects of his *laches.*

That the appellant, by her proctor, immediately on the decision being announced by the court, and before the decree was framed or its precise terms settled, gave notice orally, in the presence of the adverse proctor, that she intended to appeal from said decision, is not a sufficient demanding of an appeal.

*It seems* that a mere oral demand of appeal, without any instrument of appeal being prepared, or entry made on the minutes, or some order made by the court, is not, according to the practice in this state, a lawful demand of an appeal.

An order made by the Orphans Court more than thirty days after the decree was signed and filed, reciting that an appeal had been demanded in open court, and directing that the said appeal be entered, and that return be made therein according to law and the practice of the court, is not conclusive that an appeal had been duly demanded, when it otherwise appears that the only demand of appeal actually made, was an oral declaration of the appellant's proctor that he intended to appeal.

The principle is of universal application, that the validity of an appeal is to be decided by the appellate tribunal.

Where the court below met by formal appointment to decide the cause, and announced the decision in the hearing of both proctors, and immediately and publicly adjourned in the presence of the proctor of the aggrieved party to an early day, that the decree might be formally prepared for signature, and again met on that day, and signed the decree, which was immediately placed on file, and there remained until after the time for appealing had expired, no *actual notice* of the signing of the decree was necessary, nor is it material whether the party aggrieved or her proctor was actually in court when the decree was signed. Parties are bound to take notice of the acts and decrees of the court regularly made.

If, however, the court had met, and made the decree privily, or without full notice to the appellant, or if the fact of the decree had been intentionally concealed from the proctor of the party aggrieved, or its existence denied, or any artifice or fraudulent practice resorted to to deprive him of the opportunity of appeal, the right of appeal would not have been lost.

---

*Leupp* and *Vroom,* for appellant.

That there was no decree, because it was not signed by presiding judge. *Nix. Dig.* 171, § 4; *Ibid.* 588, § 15, 53.

As to the time within which an appeal must be demanded. *Nix. Dig.* 579, § 16; *Clark* v. *Haines,* 2 *Green's Ch. R.* 136.

The statute gives a right of appeal for six months. *Nix. Dig.* 585, § 45.

That right cannot be taken away by rule of court. *Carpenter* v. *Titus,* 4 *Halst.* 90; *Ferguson* v. *Kays,* 1 *Zab.* 431; *Allen* v. *Joyce,* 3 *Halst.* 135; *State* v. *Judge of Bergen Pleas, Penn.* 737.

*Speer,* for respondent, cited *Nix. Dig.* 579, § 16; *Caldwell* v. *Mayor of Albany,* 9 *Paige* 572; *Barclay* v. *Brown,* 7 *Paige* 245.

As to what is a sufficient demand of appeal. *Bay* v. *Van Rensselaer,* 1 *Paige* 423; *Stone* v. *Morgan,* 10 *Paige* 615; *Delany* v. *Noble,* 2 *Green's Ch. R.* 559.

THE ORDINARY. This case comes before the court upon a motion, on the part of the appellant, for an order upon the Orphans Court to send up the papers, and upon a cross-motion to dismiss the petition of appeal. The sole question at issue is, whether the appeal was demanded within the time prescribed by the statute.

The material facts are not controverted. The decision of the Orphans Court, refusing to admit the instrument propounded as the will of Josiah Schenck to probate, was announced by the court on the twenty-fifth of March, 1862, in the presence of the proctors of the respective parties. The proctor of the appellant thereupon stated verbally that he intended to appeal from the decision. The court then adjourned, in the presence of the proctors of both parties, to the thirty-first of March, when the decree was signed, and filed with the surrogate.

On the fifth of May, the following order was made, and filed in the cause. "The appeal in the above cause having been demanded in open court, it is ordered that said appeal be entered, and that return be made therein according to law and the practice of the court."

On the third of June, application was made by the proctor of the executrix, by whom the will was offered for probate, to the court, for an order directing that the costs and charges incurred by her should be charged upon the estate, and that the original decree should be amended in that respect. The court refused to alter the original decree, but made an order that the costs should be paid out of the estate.

The petition of appeal was filed in this court on the eighteenth of November, 1862.

A decree of the Orphans Court, rejecting or admitting a will to probate, is subject to an appeal to the Prerogative Court, "*if demanded by any of the parties within thirty days* after the sentence or decree of the Orphans Court." *Nix. Dig.* 579, § 16.

The right of appeal is made conditional, upon its being demanded within the time limited by the statute.

This provision is not affected by the sixth section of the act of 1849. It is expressly provided, by the seventh section of that act, that it shall not be held to apply to cases where, by law, the time within which appeals shall be *taken* from the orders, sentences, and decrees of the Orphans Court to the Prerogative Court is now limited. *Nix. Dig.* 585.

Was the appeal in this case demanded " within thirty days after the sentence or decree of the Orphans Court?" The thirty days are to be computed, not from the time the decision is announced, but from the time the decree was reduced to writing, signed and filed, or entered upon the minutes of the court. Until then there was no decree. And if the decree was formally signed, the only mode in which the adverse party can be apprized of its existence is by its being placed on the files of the court. This was done on the 31st of March.

It is objected that no decree was lawfully made, inasmuch as it was not signed by the president judge. It is shown that the presiding judge heard the argument, and concurred in the decree as pronounced. The statute requiring the decrees of the Orphans Court to be signed by the president

judge, and declaring that the record thereof, or a duly certified copy of such record, shall be evidence in all courts of this state (*Nix. Dig.* 588, § 63,) was designed rather to regulate the mode in which the decree should be authenticated, and its existence verified, than to prescribe an essential requisite to the existence or validity of the decree. If the signature of the presiding judge is essential to the existence of the decree, it follows that no decree can be made by the Orphans Court in the absence of the presiding judge. This cannot be the true construction of the act. The decree, having been duly made and filed, may be subsequently authenticated by the signature of the presiding judge. This I understand to be the general, if not the uniform course of practice that has prevailed since the act of 1855 went into operation. Decrees are constantly made and signed by the judges who hold the court in the absence of the presiding judge.

What constitutes an appeal, or the demand of an appeal, has been the subject of much discussion and of some conflict of opinion.

In *Mecray* v. *Richardson*, at July term, 1833, cited in 3 *Green's Ch. R.* 139, the appeal was dismissed on the ground that the petition of appeal had not been filed in this court within the thirty days prescribed by the statute. And in *Delany* v. *Noble*, at October term, 1831, the petition of appeal not having been filed in this court within the thirty days, it was admitted by counsel, that if the case came within the provisions of the statute the appeal was too late, and must be dismissed. The Ordinary, deeming the case to be within the provision of the statute, and acting, probably, rather upon the admission of counsel, than upon a careful consideration of the question, dismissed the appeal. In the more recent case of *Clark* v. *Haines*, 3 *Green's Ch. R.* 136, the Ordinary refused to dismiss the appeal upon this ground, holding that the demand and filing of the appeal in the court below, and not the petition of appeal in this court, was the demand of appeal intended by the act, and which, alone, is

required to be made within thirty days. This I entertain no doubt is the true construction of the statute. The demand of an appeal is always made to the tribunal by whom the cause is decided, and from whose decree the appeal is taken.

This will appear very clearly by reference to the practice of the ecclesiastical courts, from which our Orphans Court and Prerogative Court practice is mainly derived. Thus, it is said, " in these matters of appeal there are four times to be considered. 1. The time of interposing the appeal, and that is ten days, within which time the appellant ought to appeal either before the judge by whom he is grieved or before a notary. 2. The time of desiring apostles, or letters dimissory to the appellate court, which is thirty days, within which time the letters must be requested either from the judge who decided the cause, or, if he be not found in court, before a notary. 3. The time of presenting himself before the judge (to whom it is appealed) with the appeal. 4. The time of prosecuting the appeal so interposed, which is one year, and sometimes two years, from the time of the appeal interposed." *Conset's Prac.* 186, 191, 192, *part 5, ch.* 1, § 1, ¶ 1, § 2, ¶ 1, ¶ 3 ; *Cockburn's Prac.* 234, *Appendix I,* ¶ 17.

There is an obvious analogy between this practice and our own. Thus the appellant is required—1. To appeal within thirty days after the decree. 2. To cause the proceeding to be authenticated and returned to this appellate court within twenty days from the time of entering the appeal in the court below. 3. To file his petition of appeal to this court with the register within fifteen days after entering the appeal in the court below. 4. To prosecute his appeal within the time limited by the rules of this court.

If there remained room for the possibility of a doubt upon this subject, it would be removed by the recognized form of appeal, both verbal and written, in the ancient precedents. Thus, it is said, " the party against whom sentence is pronounced may (at the very same time of pronouncing it, and before the judge doth proceed to other things) appeal with

the living voice or by word of mouth delivered and spoke, at the acts of court, before the said judge who doth pronounce the sentence (who is called the judge from whom it is appealed). And this appeal he may interpose in manner and form following, *viz :* I do dissent from the pronouncing of this sentence, and do protest as to the nullity thereof, and appeal from the same, as null, invalid, and unjust," &c. A somewhat analogous form is adopted for the written appeal, clearly showing that the appeal is made to the judge *a quo. Conset's Prac., part* 5, *ch.* 2, § 4, 5.

All appeals from grievances ought to be made in writing, and interposed within ten days after sentence before the judge who pronounced the sentence, if he can be come at, if not, before a notary public and proper witnesses. *Cockburn's Prac.* 234, *ch.* 36, § 1, 3, 4. See, also, *Proctor's Prac. p.* 58, *part* 2, *appeals* 159, 160, *acts, part* 3 ; *Cockburn's Prac., Appendix* 23, 4*th inst.* 340, *ch.* 74.

I should not have deemed it necessary to say so much upon a point, which I regard as entirely free from doubt, had there not prevailed some confusion and uncertainty in our books upon the subject, which has served to create embarrassment in practice.

The failure, therefore, of the party to file his petition of appeal within thirty days from the time of the decree is clearly not within the provision of the statute. If the objection were confined to this point alone, I should have no difficulty in sustaining the appeal. The time of filing the petition of appeal is regulated by rule of court ; and wherever the rule has not been complied with the court may, in the exercise of its discretion, release the party from the effects of his *laches.* In this case, I think the delay in filing the petition of appeal is satisfactorily accounted for, and creates no embarrassment in the way of sustaining the appeal. I do not understand that this objection is seriously relied upon by the appellee.

The difficulty urged against the validity of the appeal is, that it was not taken or demanded before the Orphans Court

within the time limited by the statute. Two circumstances are relied upon to support the appellant's claim to having appealed in compliance with the requirements of the statute, *viz.* 1. That the appellant, by her proctor, immediately on the decision being announced by the court, gave notice in the presence of the proctor of the caveator that she intended to appeal from said decision. 2. That the court subsequently ordered the appeal to be entered, and return made therein, according to law and the practice of the said court.

It is urged—1st, that an appeal may be made by word of mouth or *viva voce* in open court, and that such appeal is as valid as if made in writing.

The statute, it is admitted, prescribes no form of appeal. It simply requires the appeal to be made, without declaring how it shall be made or what it is. The subsisting practice of the courts must have been within the contemplation of the legislature, as in requiring a summons to be issued, an affidavit to be made, or a notice to be given. The legislature speaks of things in *esse*—of matters familiar; and we turn to the established practice of the courts to learn what they are. I am not aware that an appeal from the decree of any tribunal, legal, equitable, or ecclesiastical, ever has been, or could be taken by mere oral declaration. Whatever may be its form, it must be accompanied by some act or evinced by some writing which shall give it formal solemnity, and render it readily susceptible of proof. Thus, an appeal from a justice of the peace may be demanded *viva voce*, and entered upon the docket of the justice, by simply tendering the bond and affidavit required by the statute. And this is certainly in accordance with the spirit of our laws and the genius of our legal institutions. It is not necessary that the statute should require a summons or a notice to be in writing, because they are always written and not verbal; and the same, I apprehend, is true of appeals to the Prerogative Court—they have always been written or manifested by some formal solemnity. In this state, so far as my inquiries have extended or my experience at the bar or upon the bench has gone, ap-

peals, without exception, have been in writing. The form of the writing varies greatly; but in all cases the fact of the appeal is evinced by a written instrument tendered to the court and filed by the surrogate.

As already said, by the ancient practice of the ecclesiastical courts, an appeal might be either in writing or *viva voce. Conset's Prac.* 186, 229, *part* 5, *ch.* 1, § 1, *ch.* 2, § 1.

The appeal *viva voce,* however, does not rest upon a mere demand of appeal; but the appellant, after declaring that he does appeal, and desires that the apostles, or letters dimissory may be given him, he proceeds—"and of this nullity, I do also equally and principally complain to you, and require you, the notary public, (that is the register or writer of the acts) to draw me a public instrument upon this appeal thus by me interposed; and I desire the witnesses here present to give their testimony upon the premises." The register thereupon prepares the instrument, inserting the names of the witnesses. *Conset's Prac.* 234, *part* 5, *ch.* 2, § 2, ¶ 4; *Cockburn's Prac.* 246, *ch.* 37, § 1, ¶ 3, 4, *Appendix II,* 24.

Thus it will be seen that the appeal *viva voce* was not only made in the most formal manner, but that it was immediately reduced to writing and verified by witnesses.

It would be a practice somewhat in conformity with this, if upon the decree being made, the party aggrieved should at once, in the presence of the court, declare that he appealed, and the fact should at once be entered upon the minutes, and a return be ordered. Nothing of the kind was attempted by the appellant in this case. No instrument of appeal was prepared—no entry made upon the minutes—no order made by the court. Before the decree was framed, or its precise terms settled, the party declared, not that he appealed, but that he intended to appeal thereafter. No appeal was in fact made even *viva voce*—no instrument in writing was prepared—no act done to constitute an appeal.

On the fifth of May, more than thirty days after the decree had been signed and filed, the following order was made by the court: "The appeal in the above cause, having been

demanded in open court, it is ordered that said appeal be entered, and that return be made therein according to law and the practice of the court." This order, it is admitted, was made and signed in the absence of the proctor of the caveator, without notice to him, by three judges, no one of whom participated in the hearing of the appeal or in making the decree. It has not since been followed up or acted upon by the court. A return has not been made according to law or the practice of the court. It would be dangerous surely to rest the fact of an appeal upon an act thus done. But assuming it to have been made in entire good faith, as I doubt not that it was, how can it constitute a valid appeal? Standing alone, the recital and order can in themselves constitute no appeal within the statute. If the appeal was made at the time of making the order, as it is fair to infer that it was, it can amount to nothing, for it was too late, the thirty days having expired. Nor can it aid in converting the *viva voce* declaration made at the time of pronouncing the decision into a valid appeal, for the appeal must be accomplished—a perfect valid act—within the thirty days. But it is urged that the court below have themselves certified that an appeal was demanded in open court, and have made an order, based upon that fact, which this court must recognize. There is much force in this suggestion. And if the evidence of the appeal rested upon this order alone, the court would at least order the papers to be returned, that it might be seen when and how that appeal was demanded. But it was admitted, upon the argument by the counsel of the appellant, and is expressly averred in the petition of appeal, that the appeal thus alleged to have been made, and ordered to be entered, was the oral declaration made upon the decision of the case, and that no other appeal was ever made. Admitting, then, that this order was made by judges fully cognizant of the fact recited in the order; that it was made upon due consideration, and under circumstances which entitle it to the force of an express adjudication, that the *viva voce* declaration was a valid appeal within the meaning of the statute—the

facts being ascertained—the question is reduced to this, by whom is the validity of the appeal to be determined? By the judge from whom or to whom the appeal is taken. I understand the principle to be of universal application, that the validity of an appeal is to be decided by the appellate tribunal.

If, therefore, the court below had formally decided that an appeal *viva voce*, without an act done, an entry made, or a memorandum written at the time, is a valid appeal, it would not affect the result.

I should have been gratified if the court below had, in compliance with their order, sent up the original papers, that they might have been seen and inspected here. But as there is in reality no disputed fact in the case, an order now upon the court below to return the papers would create additional costs and be of no practical benefit.

There is another fact in the cause entitled to consideration, *viz.* That the proctor of the appellant was not present when the decree was signed, and that he had no actual notice of its existence till the time for appealing had expired. If the court had met, and made the decree privily or without full notice to the appellant, clearly her right of appeal would not have been lost. *Cockburn's Prac.* 352, *ch.* 39, § 1, 19.

Much more, if the fact of the decree had been intentionally concealed from the proctor of the party aggrieved, or its existence denied, or any artifice or fraudulent practice resorted to to deprive him of the opportunity of appeal, the right of appeal would not have been lost. But there is no allegation of fraud or unfair practice. The court met by formal appointment to decide the cause; the decision was made in the hearing of both proctors; an adjournment was immediately and publicly made in the presence of the proctor of the aggrieved party to an early day, that the decree might be formally prepared for signature. On the day thus designated, the court met, the decree was signed, and immediately placed on file, where it thereafter remained until the time for appealing had expired.

Hillyer *v.* Schenck.

No actual notice of the signing of the decree was necessary, nor is it material whether the party aggrieved or her proctor was actually in court when the decree was signed. Parties are bound to take notice of the acts and decrees of the court regularly made.

As there was manifestly a *bona fide* intention to appeal, I cannot but regret that it has been lost through mere inadvertence. But the right of appeal and the terms upon which the right is to be enjoyed are alike prescribed. The rule is inflexible, and must be maintained.

The motion for an order to return the papers is denied, and the petition of appeal dismissed without costs to either party, as against the other.